IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CEDRIC SIMMONS                                                    PLAINTIFF

VS.                                            CIVIL ACTION NO. 1:19cv416-FKB

ANDREW SAUL, Commissioner
of Social Security                                              DEFENDANT


## ORDER

### I. Introduction

Cedric Simmons received Supplemental Security Income (SSI) as a child for
intellectual disability.  When he reached the age of 18, the Social Security
Administration performed the required review of his case and determined that benefits
should cease.[1]  The determination was upheld upon reconsideration.  He appealed and
was granted a hearing before an administrative law judge (ALJ).  On August 8, 2018,
the ALJ issued a decision finding that Simmons is not disabled.  The Appeals Council
denied review, thereby making the decision of the ALJ the final decision of the
Commissioner.  Simmons then brought this appeal pursuant to § 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).  Having considered the administrative record and the
memoranda of the parties, the Court concludes that the decision of the Commissioner
should be affirmed.

---

[1] Once an individual who has received SSI benefits based upon disability as a child reaches the age of
18, the Commissioner is required to redetermine the individual's disability under the disability rules used
for adults.  *See* 20 C.F.R. § 416.987.

## II.  Evidence Before the ALJ

Simmons was born on December 5, 1997.  He was in special education classes and received speech services throughout his school years.  Simmons turned eighteen years of age on December 5, 2015.  He alleges that he remains disabled due to intellectual disability and a speech impairment.

In December of 2015, one of Simmons' high school teachers completed a questionnaire concerning his abilities.  The teacher  indicated that Simmons' current instructional levels were third grade in reading, writing, and mathematics.  R. 161, [9] at 165.  On the questionnaire, Simmons' problems in various areas were rated on the following scale:  1 = no problem; 2 = slight problem; 3 = an obvious problem; 4 = a serious problem; and 5 = a very serious problem.  In the area of acquiring and using information, the teacher  rated the severity of his problems in the 2's and 3's.  R. 162, [9] at 166.  Attending and completing tasks were rated with 1's, 2's, and 3's.  R. 163, [9] at 167.  Simmons  had no problems in the areas of moving and manipulating objects or in caring for oneself.  R. 165-66, [9] at 169-70.  His only problem in interacting and relating with others resulted from difficulties in making his speech understood.  R. 164-65, [9] at 168-69.  The teacher indicated  that his speech could be understood one-half to two-thirds of the time initially and that almost all could be understood after repetition or rephrasing.  R. 165, [9] at 169.

In February of 2016, Simmons was evaluated by a therapist for anxiety.  His presenting complaints were a lack of focus in school and anxiety about being in front of people.  R. 312, [9] at 316.  On mental status exam, his behavior was restless and

2

fidgety, and affect was constricted.  R. 314, [9] at 318.  The examiner stated that cognition was impaired due to a learning disability and emotion and that insight and judgment were limited.  *Id.*  Diagnosis was generalized anxiety disorder.  *Id.*  Simmons was encouraged to remain physically active.  *Id.*  No medication was prescribed.  *Id.*  The therapist recommended outpatient individual therapy, but there is no indication in the record of any follow-up treatment.  *Id.*

A consultative exam was performed in March of 2016 by Patsy Zakaras, Ph.D.  In the history portion of the report, Dr. Zakaras stated that Simmons was currently a junior in high school and had no medical problems.  R. 319, [9] at 323.  He had been on the track team at school since the ninth grade and enjoyed this activity very much.  *Id.*  He also played basketball.  *Id.*  Dr. Zakaras noted that Simmons performed chores such as doing the dishes and laundry.  *Id.*  Testing resulted in the following scores on the Wechsler Adult Intelligence Scale (WAIS-IV):  Verbal comprehension, 63; perceptual reasoning, 58; working memory, 80; processing speed, 76; and full-scale IQ, 63.  R. 320, [9] at 324.  Scores for the Wide Range Achievement Test – IV (WRAT-IV) indicated reading and spelling ability at grade level 4 and mathematics at grade level 2.  *Id*.  Dr. Zakaras' impression was learning disorder, NOS.  *Id.*  She opined that Simmons was functioning between the mentally defective and low average range overall intellectually with some inconsistency of performance.  *Id.*  Dr. Zakaras stated that Simmons seemed capable of performing routine, repetitive tasks, understanding and following directions, and relating to and interacting with others.  R. 321, [9] at 325.

3

A psychiatric review technique form was completed by Amy Morgan, Ph.D., a non-examining consultant, in April of 2016.  Functional limitations identified by Dr. Morgan were mild restrictions of the activities of daily living; moderate difficulties in maintaining concentration persistence, and pace; mild difficulties in maintaining social functioning; and no episodes of decompensation.  R. 332, [9] at 336.  On the mental residual functional capacity (RFC) form, Dr. Morgan indicated that Simmons was, at most, moderately limited in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation  R. 336-37, [9] at 340-41   Her opinion was that Simmons was capable of understanding and remembering instructions and carrying out routine, repetitive tasks, maintaining attention and concentration for two hours, completing simple and more detailed work activities, interacting with supervisors and others at a basic level, and adapting to a work setting. R. 338, [9] at 342.

In September of 2016, Simmons underwent testing in connection with high school special education assessment.  On the Woodcock-Johnson Tests of Achievement – IV (WJ-IV), his scores indicated basic reading skills at grade level 4.6, reading comprehension at 5.5, reading fluency at  4.0, written expression at 2.9, math calculation at 2.5, and math problem solving at 2.2.  R. 345, [9] at 349.

At the hearing, Simmons testified as follows.  He graduated from high school, where he was in special education.  R. 57, [9] at 61.  He lives with his mother and is undergoing vocational training at Ability Works, where he is learning to build crab traps. R. 58-59, [9] at 62-63.  At home he helps with chores, such as doing the dishes, doing

laundry, sweeping, and mowing the yard.  R. 61-62, [9] at 65-66.  He can cook some

things.  R. 61, [9] at 65.  He gets along very well with other people.  R. 59, [9] at 61.

Simmons likes playing basketball with his friends, spending time with his nieces, talking

on the phone, watching sports and cartoons on television, and shopping at the mall.  R.

60-61, [9] at 64-65.  He goes out to eat with his family every now and then.  R. 62, [9] at

66.  Simmons does not drive, and he has never taken a cab or used public

transportation.  R. 60-61, [9] at 64-65.

Also testifying at the hearing was a vocational expert (VE).  The ALJ posed a

hypothetical to the VE in which he described a person of the same age range,

educational background, work history, and transferable skills as Simmons, and having

the following limitations:  The ability to understand, remember, and carry out simple

instructions; to perform routine tasks; to attend for two-hour periods to simple one- or

two-step tasks, and to perform reading, writing, and math on a fifth-grade level.  R. 62,

[9] at 66.  The VE responded that such a person could perform the jobs of silver

wrapper, dishwasher, and grocery bagger.  R. 62-63, [9] at 66-67.

### III.  The Decision of the ALJ

In evaluating Simmons' claim, the ALJ worked through the familiar sequential

evaluation process for determining disability.[2]  At step two, the ALJ found that Simmons

---

[2] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)     whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)     whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

has the severe impairment of intellectual disability.  R. 24, [9] at 28.  The ALJ made a

step-three finding that Simmons has no impairment or combination of impairments that

meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  R. 24-27, [9] at 28-31.  At step four, the ALJ determined that Simmons has

the RFC to perform a full range of work at all exertional levels, with the following

limitations:  He can understand, remember, and carry out simple instructions and

routine tasks; he can attend for two-hour periods; he can perform simple one- to two-

step tasks; and he can perform writing and math on a fifth-grade level.  R. 27, [9] at 31.

Although Simmons had alleged a speech problem, the ALJ found, based upon

Simmons' speech at the hearing, the teacher report regarding his speech, and the lack

of any ongoing speech treatment during the period under consideration, that Simmons

experiences no limitations in this area.  R. 28, [9] at 32.

At step four, the ALJ found that Simmons has no past relevant work.  R. 29, [9] at

33.  Relying on the testimony of the VE, the ALJ determined at step five that Simmons

is capable of performing the jobs of silver wrapper, dishwasher, and grocery bagger.  R.

---

(3)     whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)     whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)     whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. § 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).  Step one does not apply in a redetermination case.  See 20 C.F.R. § 416.987(b).

30, [9] at 34.  He therefore found that Simmons' disability ended on June 1, 2016, and

that he has not been disabled at any time since that date.  R. 30-31, [9] at 34-35.

## IV.  Analysis

In reviewing the Commissioner's decision, this court is limited to an inquiry into

whether there is substantial evidence to support the findings of the Commissioner and

whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925

F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[3]

In support of his appeal, Simmons makes the following arguments:

The ALJ failed to properly inform Simmons of his right to representation at
the hearing;

the ALJ erred in failing to order a consultative examination;

the ALJ's RFC determination is not supported by substantial evidence;
and

the ALJ erred in relying upon the testimony of the VE.

### *Right to Representation*

Simmons was not represented by counsel at the ALJ hearing.  Although the ALJ

discussed his right to representation and Simmons signed a waiver, Simmons argues

that he did not have the intellectual capacity and reading ability to understand his rights

---

[3] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as
adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . .
."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302
(5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and
must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402
U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is against the
Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

and that, moreover, the transcript does not establish that he understood his right to representation.

Prior to the hearing, Simmons received the usual information about his right to counsel, *see* R. 78, [9] at 82; R. 89, [9] at 93; R. 97, [9] at 101; R. 114, [9] at 118; and he signed a waiver of representation form, R. 124, [9] at 128.  At the hearing, the ALJ inquired on the record about his lack of representation:

> ALJ: Mr. Simmons, I see that you're unrepresented.  Some representatives who represent you free of charge if you qualify and SSA can give you their names and numbers.  Some of them can help you find additional evidence and submit arguments, but it's not required to have a representative, I can ask you the questions here today.  You understand your right to a representative?
>
> Simmons: It mean like, somebody could come help with me?
>
> ALJ: Right.  You understand your right to a representative?  You wish to have a representative here today or not?
>
> Simmons: Oh, can my mom come?
>
> ALJ: She's not a representative.
>
> Simmons: Oh, but she can't come in here?
>
> ALJ: No.  By representative we mean like a lawyer or something like that.
>
> Simmons: Oh.  We good.  I can do it without him.
>
> ALJ: All right.  You wish to proceed today.  All right.

R. 56-57, [9] at 60-61.

Throughout the hearing, Simmons showed an understanding of the questions posed to him and was able to adequately respond.  Given that context, this particular

8

exchange shows an adequate understanding by Simmons of his right to have someone represent him.  It is troubling, however, that when Simmons asked for his mother to act as his representative, the ALJ refused.  The regulations provide that a non-attorney who can help a claimant present his case may act as his representative.  20 C.F.R. § 416.1505(b).  The better response would have been to discuss this possibility with both Simmons and his mother and determine whether her assistance could be helpful.

But Simmons has not shown that the absence of representation resulted in any unfairness or prejudice to him. *See Green v. Weinberger*, 500 F.2d 203, 205 n. 2 (5th Cir. 1974).  An ALJ hearing is not an adversary proceeding, and the ALJ has an independent duty to develop the facts and probe for all relevant information  *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (*citing Ware v. Schweiker*, 651 F. 2d 408, 414 (5th Cir. 1981)).  In the present case, the ALJ questioned Simmons carefully about his abilities and limitations.  Because Simmons has not shown prejudice, reversal is not warranted.

### *Consultative Exam*

Simmons asserts that the ALJ erred in his duty to develop the record by failing to order an additional consultative exam.  He argues that the consultative exam by Dr. Zakaras in March of 2016 was too remote in time and was not based upon a complete assessment of all of Simmons' impairments because it did not take into consideration the diagnosis of generalized anxiety disorder.

The Court finds no error in the ALJ's reliance upon the record as it stands.   The record contains detailed evidence adduced after Simmons reached the age of 18

concerning his intellectual disorder.  Furthermore, the assessment of Simmons' anxiety disorder contains nothing to indicate that Simmons suffered from any limitations beyond those identified throughout the relevant portions of the record, and he received no further treatment for the condition.

### RFC Determination

Simmons contends that the ALJ's step-five finding is not supported by substantial evidence.  First, he points out that the ALJ's findings as to Simmons' abilities in writing and math are not supported by the record. The ALJ found that Simmons has the ability to write and perform math at the fifth-grade level.  However, the highest grade levels achieved in writing and math on any of his testing were 2.9 in written expression and 3.0 in math.  To the extent the ALJ erred in finding that Simmons had higher levels of ability in these areas, Simmons was not prejudiced by the error, as the three jobs identified by the ALJ as available for Simmons - dishwasher, silverware wrapper, and grocery bagger - all require math and language general education levels of one, the lowest possible level.[4]

The record contains detailed evidence supporting the ALJ's other determinations as to Simmons' ability to perform mental work-related functions:  The teacher questionnaire of December 2015, which the ALJ gave great weight, addressed a total of 23 separate items in the areas of acquiring and using information and attending and completing tasks and indicated that Simmons had only slight or obvious problems (as

---

[4] *See* DOT §§ 318.687-010 (kitchen helper) and 318.687-018 (silver wrapper), available at http://www.govtusa.com/dot/dot03a.html; and 920.687-014 (bagger), available at http://www.govtusa.com/dot/dot09a.html.

opposed to serious problems) in these areas.  R. 162-63, [9] at 166-67.  It also indicated

that his only problem in interacting and relating with others resulted from a speech

defect.  R. 164-65, [9] at 168-69.  Dr. Zakaras' opinion, which the ALJ also gave great

weight, was that Simmons could perform simple, repetitive tasks, follow and understand

directions, and relate and interact with others.  R. 321, [9] at 325. The mental RFC  form

completed by Dr. Morgan, to which the ALJ gave significant weight, indicated that

Simmons has no more than moderate limitations in any of the 20 areas addressed.  R.

336-37, [9] at 340-41.  It was Dr. Morgan's opinion that Simmons is capable of

sustained work involving routine, repetitive tasks. R. 338, [9] at 342. These evaluations

constitute substantial evidence to support the ALJ's determination that Simmons can

perform work involving simple instructions and routine tasks and can attend to tasks for

two-hour periods.

Simmons also argues that the ALJ did not consider the limitations resulting from

his generalized anxiety disorder.  But as stated above, nothing in the assessment of

Simmons' anxiety disorder suggests that this condition caused any limitations greater

than those indicated in the detailed assessments and testing relied upon by the ALJ.

In summary, the ALJ's RFC findings provide no basis for reversal of his decision.

***Reliance on VE Testimony***

In his final argument, Simmons contends that because the ALJ's RFC

determination was not based upon substantial evidence, the ALJ erred in relying upon

the VE's testimony in response to the hypothetical incorporating that RFC

determination.  Because the Court has concluded that the ALJ did not err in his RFC

determination, this argument is likewise without merit.

### IV.  Conclusion

For these reasons, the Court concludes that the decision of the ALJ is supported

by substantial evidence and that no reversible errors of law were made.  Accordingly,

the decision of the Commissioner is affirmed.   A separate judgment will be entered.

So ordered, this the 4th day of August, 2020.


/s/ F. Keith Ball_____
United States Magistrate Judge

12